IN THE SUPREME COURT OF THE STATE OF DELAWARE

IN THE MATTER OF A           §
MEMBER OF THE BAR OF THE     §    No. 34, 2016
SUPREME COURT OF             §
DELAWARE:                    §    Board on Prof. Responsibility
                             §    Case No. 112243-B
TIMOTHY P. CAIRNS,           §
                             §
        Respondent.          §

Submitted:  January 29, 2016
Decided:    February 5, 2016

Before **STRINE**, Chief Justice; **HOLLAND**, and **SEITZ**, Justices.

## O R D E R

This 5th day of February 2016, it appears to the Court that:

(1)    This is a lawyer disciplinary proceeding. On January 19, 2016, a panel of the Board on Professional Responsibility ("the Board") filed its Report with this Court, recommending that the respondent, Timothy P. Cairns, be suspended from the practice of law in Delaware for a period of 21 months, retroactive to the date of Cairns' transfer to disability inactive status on November 12, 2014. Neither the Office of Disciplinary Counsel ("ODC") nor Cairns has filed any objections to the Board's report.

(2)    The Court has considered the matter carefully. Cairns admitted the sole ethical violation alleged in the ODC's petition against him. The Board carefully considered Cairns' ethical violation, his knowing state of mind, the actual

injuries caused by his misconduct, and all of the applicable aggravating and mitigating factors. Under the circumstances, we find the Board's recommendation of a 21-month suspension to be appropriate. We therefore accept the Board's findings and recommendation for discipline.

NOW, THEREFORE, IT IS ORDERED that the Board's Report dated January 19, 2016 (attached hereto) is ACCEPTED. Timothy Cairns is hereby SUSPENDED from the practice of law in Delaware for a period of 21 months beginning November 12, 2014. Cairns shall pay the cost of the disciplinary proceedings. The Office of Disciplinary Counsel shall disseminate this Order in accordance with Rule 14 of the Delaware Lawyers' Rules of Disciplinary Procedure.

BY THE COURT:

*/s/ Leo E. Strine, Jr.*

Chief Justice

## BOARD ON PROFESSIONAL RESPONSIBILITY
## OF THE SUPREME COURT OF THE STATE OF DELAWARE

In the Matter of a Member of )
The Bar of the Supreme Court )
of Delaware: )       **CONFIDENTIAL**
)
TIMOTHY P. CAIRNS, )       Board Case No. 111858-B
)
Respondent. )

## REPORT OF THE BOARD AND RECOMMENDATION OF SANCTION

This is the report of the Board of Professional Responsibility ("Board" or "Panel")

on proceedings instituted by a Petition for Discipline ("Petition") filed by the Office of

Disciplinary Counsel ("ODC") on July 8, 2015. Respondent filed an Answer on July 24,

2015, admitting the sole count of disciplinary violation of Rule 8.4(b). A hearing was held

on October 8, 2015, before Board Panel members Robert Saunders, Esquire, Deborah L.

Miller, Ph.D., and Danielle K. Yearick, Esquire, Chair. Jennifer-Kate Aaronson, Esquire,

represented the ODC and Respondent was represented by Charles Slanina, Esquire.

This Petition arises out of conduct of the Respondent in operating a motor vehicle

while under the influence of alcohol and causing serious physical injury to another driver

as a result. The ODC's Petition before this Board alleges one Count of professional

misconduct, in violation of Rule 8.4(b) of the Delaware Lawyers' Rules of Professional

Conduct ("DLRPC"). Respondent admitted all averments in the Petition and the

violation Count.[1] Therefore, the issue for this Panel is the appropriate sanction.

---

[1] *See Respondent's Answer and 10/08/15 hearing transcript, Tr. at p. 8-9. (All citations to the 10/08/15 hearing transcript shall be cited as "Tr. at _____").*

1

## I. FACTS

Respondent was admitted to the Delaware Bar in 2002.[2] On September 23, 2014, at approximately 10:50pm, Respondent fell asleep while operating his motor vehicle under the influence of alcohol and crossed the roadway dividing line and struck an oncoming vehicle head on, causing injury to the driver of that vehicle.[3] Respondent pleaded no contest to a charge of Driving Under the Influence ("DUI") in violation of 21 *Del.C.* §4177 and Driving on the Wrong Side of the Road in violation of 21 *Del.C.* §4114.[4] Respondent was charged with Vehicular Assault First Degree, a Class F felony, and as a result, ODC filed a Verified Petition for Interim Suspension.[5] On November 12, 2014, the Court granted Respondent's request to transfer to disability inactive status.[6] On June 10, 2015, Respondent pleaded guilty to the misdemeanor, Vehicular Assault Second Degree, in violation of 11 *Del.C.* 628A(2), for which he was sentenced to one year Level V incarceration suspended for one year Level II probation, a fine suspended for one year, payment of restitution, revocation of driving privileges for one year, and substance abuse evaluation for treatment, counseling, and screening.[7]

Respondent presented the testimony of four witnesses, in addition to his own testimony, for purposes of the sanctions hearing on October 8, 2015. The testimony of each credibly demonstrated Respondent's good character and reputation, good standing

---

[2] Petition ¶1; Tr. at p. 11.
[3] Tr. at pp. 11-12; 93; Petition and Answer ¶11; Exhibit #1, tab A.
[4] Petition ¶3; Exhibit #1, tabs D, G; Tr. at p. 13-14.
[5] Petition ¶4, 5; Exhibit #1, tab D.
[6] Petition ¶6.
[7] Exhibit #1, tabs A and B; Petition ¶7.

2

among his partners and peers, and a genuine, zealous compliance with and commitment to rehabilitation, substance abuse treatment and counseling, and sobriety. Respondent has exhibited a consistent and high level of commitment to and participation in rehabilitative measures and programs, beginning immediately following his accident, and has been sober since the September 2014 accident. This Panel is impressed by the genuine nature of Respondent's remorse and his rehabilitative efforts.

Laura Davis Jones, Esquire was admitted to the Delaware Bar in 1986 and is the managing partner of the Delaware office for Pachulski Stang Ziehl & Jones, where Respondent was employed since 2007 and a partner since 2012. Respondent's character and reputation was excellent.[8] Respondent is on leave but has not been withdrawn from the partnership and is expected to return to work with the firm upon his reinstatement.[9] Attorney Jones testified that Respondent was a valuable and integral part of the firm, and exhibited excellent professional performance during his tenure with the firm, with no complaints from clients or peers. Respondent called Attorney Jones from the police station on the night of the accident to advise her of the accident. Respondent expressed to Attorney Jones his devastation and remorse regarding the accident, acknowledging that his conduct was more than a mistake, and expressing his grave concern about the driver of the other car.[10]

Rudolph Judson Scaggs, Jr., Esquire was admitted to the Delaware Bar in 1989 and is a partner at Morris Nichols Arsht & Tunnell and Chairman of the Delaware Lawyers

---

[8] Tr. at p. 19-22.
[9] Tr. at p. 21-24.
[10] Tr. at p. 23-24.

3

Assistance Committee.[11] Attorney Scaggs met Respondent when Respondent entered the Delaware Lawyers Assistance Program ("De-LAP") as well as a recovery group that Respondent joined once he was discharged from his admission to the rehabilitation program at Father Martin's Ashley after the accident.[12] Attorney Scaggs sees or has contact with Respondent on average twice a week, and sometimes more often, including at group therapy and AA Meetings as well as individual meetings or discussions.[13] Attorney Scaggs testified that "recovery" includes not drinking or drugging, and life changes that include emotional, mental, and spiritual changes to prevent/avoid a need to return to the addiction. Attorney Scaggs has seen Respondent implement all of those changes and "recovery" steps, and is confident that Respondent has not had a drink since he went to Father Martin's immediately after the accident.[14] Attorney Scaggs testified that Respondent exhibited and implemented a "very strong commitment" to the program, rehabilitation, and these life changes for recovery.[15] Respondent immediately started very regular attendance at meetings, regularly participated in the meetings, undertook a spiritual program returning to his church, a disciplined and difficult spiritual mentoring program with a priest, and "has done better than most" in his commitment and sustained recovery and rehabilitation.[16] Respondent's recovery and sustained sobriety and rehabilitation is now past a year, during which Attorney Scaggs

[11] Tr. at p. 26.
[12] Tr. at p. 29-30.
[13] Tr. at p. 30-31.
[14] Tr. at p. 31-32.
[15] Tr. at p. 33-34.
[16] Id.

4

has observed Respondent show a consistent and ongoing attention to commitment to recovery, including sobriety, lifestyle changes, and mental, emotional, and spiritual changes without the need for drug or drink.[17]  Respondent has also helped Attorney Scaggs with his continued and sustained recovery.[18]  Respondent has expressed extreme remorse for the accident and having injured another human being, and his response has been to get help, take responsibility, understand that he needs to make amends, and a relentless pursuit of sustained recovery and life changes, setting an example to even those that have succeeded, and Respondent has recently transitioned from "needing more help to giving more help."[19]

Alice O'Brien is a licensed professional counselor of mental health who works with the De-LAP, and has worked with Respondent for over a year, since Respondent was referred to her after he completed treatment at Father Martin's Ashley, which is where Ms. O'Brien first met Respondent.[20]  Witness O'Brien has seen Respondent weekly for counseling treatment up through August 2015, and biweekly since then.  She also saw Respondent weekly from when he first entered her practice in November of 2014 through June 2015 for group sessions.[21]  On average, Ms. O'Brien continues to see Respondent twice a week, including for counseling treatment sessions, as well as group meetings. Respondent also sees his pastor weekly and continues to participate in the De-LAP recovery group meetings every week, in addition to three AA meetings he attends every

---

[17] Tr. at p. 38-40.
[18] Tr. at p. 41.
[19] Tr. at p. 40; 42-44.
[20] Tr. at p. 45-47.
[21] Tr. at p. 47-48.

5

week.[22] Respondent has been "above and beyond" compliant with treatment recommendations, including attending 90 AA meetings in 90 days and weekly counseling and group sessions. Additionally, Respondent visits with his priest weekly or biweekly, and is a Eucharistic minister at his parish church and is teaching Catechism to second graders preparing for their First Communion.[23] Ms. O'Brien testified, "Of all the people I have treated inpatient at Father Martin's and in my outpatient practice, [Respondent] ranks among the most convicted people about righting his wrongs, making it right."[24] Ms. O'Brien testified that Respondent has demonstrated a "profound sense of remorse," and compliance with treatment and rehabilitation "nothing less than stellar."[25]

Witness O'Brien testified that Respondent has demonstrated "ample" evidence of his seriousness about remaining abstinent and improving the conditions of his life that led to his drinking, and "ample" evidence that he has turned his life around.[26]

Carol Waldhauser is the executive director of the De-LAP, and has worked in the substance abuse and addiction field for approximately 20 years.[27] Respondent contacted De-LAP immediately after the accident in September 2014 before he voluntarily admitted himself to the inpatient rehabilitation treatment at Father Martin's Ashley.[28] Upon Respondent's return from Father Martin's Ashley, he contacted De-LAP and voluntarily entered into a contract with De-LAP for mental health addictions counseling, spiritual

---

[22] Tr. at p. 47-48.
[23] Tr. at p. 49.
[24] Tr. at p. 50.
[25] Tr. at p. 50-51.
[26] Tr. at p. 55-57.
[27] Tr. at p. 59-62.
[28] Tr. at p. 64.

6

counseling, random screenings, and to work with a peer monitor.[29] Respondent has been "more than compliant" with the terms of his contract with De-LAP and rehabilitation program.[30] Respondent underwent drug and alcohol screens through De-LAP and through his sentencing terms, with the most recent screening a few days before the Board hearing, all of which were negative for consumption of drugs or alcohol.[31] Ms. Waldhauser sees Respondent twice a week, including Monday phone calls, Thursday group meetings, and 12-Step Meetings. Respondent has been consistent and compliant and demonstrated "remarkable" seriousness in his recovery and change.[32] Ms. Waldhauser testified that Respondent is in remission and has implemented the appropriate safeguards such that she is confident that Respondent will be successful.[33] Respondent has demonstrated genuine remorse as well as commitment to the program, including volunteering his services to help other attorneys in the program.[34]

Respondent Cairns testified he would drink before this accident, but was not aware that he had an alcohol abuse problem to address until the summer of 2014 and once he went to Father Martin's Ashley.[35] In 2009, Respondent was in a single-car accident, and charged with DUI, which charge was eventually dropped.[36] However, Respondent did not believe he was an alcoholic in 2009, but believes that was an isolated incident after which he paid closer attention to what he was doing as far as drinking or

---

[29] Tr. at p. 64-66.
[30] Tr. at p. 66.
[31] Tr. at p. 66-67.
[32] Tr. at p. 69-70.
[33] Tr. at p. 70-71.
[34] Tr. at p. 72.
[35] Tr. at p. 101-102.
[36] Tr. at p. 104-105.

7

driving afterwards.[37] Respondent acknowledged that he did consider seeking treatment for alcohol issues or recognize that he had a problem during the months before the 2014 accident, and he acknowledges that he had black-outs from drinking before the summer of 2014.[38]

The day after the accident, Respondent contacted Attorney Slanina, directing him to report the accident to ODC, called Carol Waldhauser from De-LAP to speak with her, and made arrangements to be admitted to inpatient rehabilitation at Father Martin's Ashley.[39] Following his completion of the program at Father Martin's Ashley, Respondent went to 90 meetings in 90 days, established a sponsor, whom he had contacted the day after the accident, began the AA recovery program, initiated formal counseling with Alice O'Brien, entered the monitoring agreement with De-LAP, began attending lawyer's meetings every Thursday, and met with a priest at his local church and started meeting him weekly for spiritual counseling.[40] Respondent now speaks with and counsels other attorneys who are referred to him by Ms. Waldhauser/De-LAP.[41]

Respondent has not consumed alcohol since the September 2014 accident.[42] He remains very active in AA, active in helping other people, active in his church, and committed to maintaining his sobriety.[43] He remains on unpaid leave of absence with his firm and has not worked or received employment income since his accident.[44]

---

[37] Tr. at p. 104; 113-114.
[38] Tr. at p. 101; 115-116.
[39] Tr. at p. 85-86.
[40] Tr. at p. 87-88.
[41] Tr. at p. 88.
[42] Tr. at p. 90.
[43] Tr. at p. 92-93.
[44] Tr. at p. 94-95; 99; 109.

8

## II. VIOLATION OF PROFESSIONAL CONDUCT

Respondent has admitted the sole Count of the Petition, and his criminal conviction on the misdemeanor forms the underlying basis for this disciplinary proceeding. Respondent's admission, as well as the testimony and evidence presented to the Panel, demonstrate by clear and convincing evidence that Respondent engaged in criminal conduct when he operated a motor vehicle while under the influence of alcohol (with a BAC of .17), and caused serious physical injury to another, for which he pleaded guilty to the misdemeanor of Vehicular Assault Second Degree. As such, Respondent violated DLRPC Rule 8.4(b), which provides that it is professional misconduct for an attorney to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." This Court has previously held that criminal misconduct such as that of the Respondent violates the lawyer's duties to the public, to the legal system, and to the legal profession.[45]

## III. RECOMMENDED SANCTION

This Board recommends a sanction of suspension for no less than 21 months, retroactive to November 12, 2014, the date of Respondent's transfer to inactive disability status. The Board considers the four factor analysis under ABA Standards for Imposing Lawyer Sanctions: a) the ethical duties violated by the lawyer; (b) the lawyer's mental state; (c) the extent of actual or potential injury caused by the lawyer's misconduct; and (d) aggravating and mitigating factors.[46] The Board also looks to Delaware precedent.

---

[45] *In re Steiner*, 817 A.2d 793, 796-797 (Del. 2003); See also, *In re Amalfitano*, 931 A.2d 1006 (Del. 2007); *In re Howard*, 765 A.2d 39 (Del. 2000); *In re Melvin*, 807 A.2d 550 (Del. 2002).
[46] ABA Stndrds for Imposing Lawyer Sanctions (1992), Section 3.0; *In re Bailey*, 821 A.2d 851, 866 (Del. 2003).

9

## A. The Ethical Duties Violated by Respondent

By his criminal misconduct and violation of DLRPC 8.4(b), Respondent violated a lawyer's duties to the public, to the legal system, and to the legal profession.[47]

## B. Respondent's Mental State

Driving a car while intoxicated clearly reflects a knowing state of mind.[48]

## C. Actual or Potential Injury

Respondent's misconduct caused serious physical injury to the other driver in this accident.

## The Presumptive Sanction(s)

The parties agree, as does Delaware precedent, that ABA Standard 5.12 applies to this type of misconduct and violation, mandating a sanction of suspension.[49] Therefore, the primary question for this Panel is the period of the appropriate suspension under the circumstances and based upon Delaware precedent. Delaware Rules of Disciplinary Procedure Rule 8(a)(2) allows for a maximum suspension of three years.

## D. The Existence of Aggravating and Mitigating Circumstances

Following the determination of the presumptive sanction of suspension, the Panel must consider aggravating and mitigating circumstances before recommending the final sanction to be imposed.[50] Aggravating factors or circumstances are those that might

---

[47] *In re Howard,* 765 A.2d 39, 44-45 (Del. 2000); *In re Steiner,* 817 A.2d 793, 796 (Del. 2003); *In re Amalfitano,* 931 A.2d 1006 (Table), 2007 WL 1576357 at 4 (Del. 2007).

[48] *Steiner* 817 A.2d at 796; *Amalfitano, supra* at 4.

[49] ABA Standards, 5.12: "Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 [misrepresentation, fraud, theft, distribution of controlled substances, or other intentional conduct involving dishonesty or deceit], and that seriously adversely reflects on the lawyer's fitness to practice." (1992)

[50] ABA Standard 9.1

10

justify an increase, and mitigating factors are those that might justify a decrease, in the degree of discipline to be imposed.

Aggravating Factors

From the list of factors included in the ABA Standard 9.22, the Board finds the following aggravating factors:

(a)     Substantial experience in the practice of law.  Respondent has been admitted to the Bar since 2002, and was a partner in his firm.

(b)     Illegal misconduct.

(c)     Although the September 2014 accident is Respondent's only criminal conviction, there exists at least a question of a pattern of similar misconduct, based upon Respondent's history of a 2009 accident while driving under the influence of alcohol and his admission that his alcohol abuse became a problem by the summer of 2014, such that he was considering seeking help for this problem several months before the 2014 accident. Respondent's documented history in the report of Psychologist Steve Eichel, Ph.D., also reflects a prior history of substance use/abuse both before and after Respondent was admitted to practice law.[51]

Mitigating Factors

ABA Standard 9.32 sets forth a non-exhaustive list of mitigating factors to be considered that may justify a reduction in the sanction to be imposed.  The Board finds the following mitigating factors to exist:

(a)     The absence of a prior disciplinary record.

[51] *See* Exhibit #1, tab F.

11

(b) The absence of a dishonest or selfish motive.

(c) Full and free voluntary disclosure to the disciplinary board and cooperative attitude toward proceedings.

(d) Good character and reputation.

(e) Additional penalties have been imposed for his misconduct, including criminal sentencing, payment of fines and restitution, suspension of his driver's license, and civil action against him by the victim.

(f) Respondent exhibits, both through his testimony and his rehabilitation efforts, genuine and profound remorse for his misconduct and the injury it caused.

(g) ABA Standard 9.32(i) should be considered among the mitigating factors, although rehabilitation from chemical dependency should not, by itself, justify a sanction recommendation less than that which would have been imposed upon an attorney in similar circumstances where a chemical dependency was not present.[52]

(1) Substantial evidence was presented to this Board, including the psychological expert report of Dr. Eichel, that Respondent was (and is) affected by chemical dependency, namely alcoholism.[53] In addition to demonstrating through medical evidence that Respondent is affected by alcoholism, ABA Standard 9.32(i) also requires additional factors before this chemical dependency can be weighed as a mitigating factor: (2) Although the Board does not negate the fact that Respondent made the conscious decision to drink alcohol without making prior arrangements for

---

[52] ABA Standard, 9.32, Commentary (1992).

[53] See, e.g., Exhibit #1, tab F (reported testing performed by Dr. Eichel shows that Respondent meets the criteria for Alcohol Use Disorder and Alcohol Dependence).

12

transportation, it is self-evident that his alcoholism was principally responsible for Respondent's misconduct. The criteria disputed between ODC and Respondent are criteria (3) and (4) of ABA Standard 9.32(i), i.e., whether Respondent has demonstrated recovery from his alcoholism by a meaningful and sustained period of successful rehabilitation such that recurrence of his misconduct is unlikely. There is no hard and fast rule as to what period of sobriety is sufficient to demonstrate either recovery or a "meaningful and sustained period of successful rehabilitation." Delaware precedent provides some guidance, but the analogous cases involved substantially shorter or longer periods of successful and sustained rehabilitation than Respondent's.[54] This Board therefore also looks to the weight and credibility of the evidence and testimony/opinions presented as to Respondent's consistent compliance with treatment and rehabilitation for more than one year, and factors identified by Respondent's counselors and peer mentor relevant to demonstrating his recovery/remission status. Respondent has demonstrated aggressive and consistent rehabilitation since the accident, implementing the appropriate and necessary life changes and counseling to maintain his sobriety for over one year, with continued participation in AA and De-LAP; the Board believes Respondent's representation that he has not consumed alcohol since the date of the September 2014 accident. In considering the applicability of this mitigating factor, the Board gives weight

---

[54] See, *In re Almalfitano*, 2007 WL 1576357 (9.32(i) mitigating factor was met where period of rehabilitation without DUIs or alcohol-related incidents since respondent's relapses was demonstrated between 2003 and 2007); *In re Howard*, 765 A.2d 39 (9.32(i) factors were met where respondent had no incidences of cocaine/drug use or misconduct between his 1998 relapse and 2000). Compare, *In re Steiner*, 817 A.2d 793 (period of rehab was nascent and not yet proved successful or meaningful where respondent had only four months of sobriety, and violated probation thereafter); *In re Hull*, 767 A.2d 197 (Del. 2001)(treatment had only begun for a psychiatric condition that contributed to a long-term pattern of professional misconduct; projection of six months of treatment for successful recovery was not yet proven).

13

and deference to the testimony and opinions of witnesses qualified and experienced in substance abuse and addiction recovery and who are in the best position to assess Respondent's rehabilitation status: Witnesses Scaggs, O'Brien and Waldhauser have witnessed and attested to Respondent's demonstrated recovery, exemplary rehabilitation measures, high level of commitment to his recovery, and anticipated success in sustaining his remission. Dr. Eichel's report and evaluation also deemed Respondent to be in sustained remission from his alcohol use disorder and in remission from his alcohol dependence.[55] Respondent has had no incidences of relapse or further similar misconduct related to his alcoholism or otherwise, and the testimony of Respondent, his peers, and his counselors provide credible opinions and convictions that recurrence of the misconduct in question is improbable. This Panel is not unmindful of the fact that with the disease of alcoholism there remains a risk of recurrence or relapse, regardless of the period of sustained or successful rehabilitation. In addition to Respondent's proven sustained sobriety and meaningful rehabilitation for over one year, this Panel is persuaded by Respondent's demonstrated genuine commitment to his rehabilitation and sustained recovery, his use of multiple resources to ensure his continued successful rehabilitation, and the opinions of those who have been involved in Respondent's rehabilitation, all of which suggest that recurrence of the misconduct is unlikely.

While a longer period of sustained recovery may be ideal to Respondent's reinstatement, his period of sustained successful rehabilitation represents clear and

---

[55] See Exhibit #1, tab F, p. 6.

14

convincing evidence to this Board to satisfy the conditions to the mitigating factor under ABA 9.32(i).

## Period of Recommended Sanction

A 21-month suspension is an appropriate length after weighing the aggravating and mitigating factors and considering analogous Delaware cases in which suspension was ordered. The Board also believes that the suspension should be made retroactive to Respondent's date of inactive disability status (11/12/14), as that is consistent with similar cases.[56] In arriving at the recommended period of suspension, the Panel contemplates the goals of disciplinary proceedings to protect the public, to preserve confidence in the legal profession, and to deter other Delaware lawyers from similar misconduct.[57] A 21-month sanction would serve this purpose, without being overly-punitive in nature, but would allow Respondent to continue his rehabilitative efforts to further demonstrate his sustained and successful recovery and fitness to return to the practice of law once he becomes eligible to seek reinstatement on August 11, 2016. The Panel does not believe that a longer period of suspension would serve as any greater deterrence to Delaware lawyers from engaging in similar misconduct; moreover, the period of suspension serves the appropriate purpose of both deterrence and public protections, while also encouraging similar exemplary rehabilitation efforts, and increasing awareness of the available resources, including participation in De-LAP, to Delaware lawyers suffering from similar addiction/dependency issues. Respondent's

---

[56] See, *In re Amalfitano* at *4; *In re Steiner*, supra; *In re Howard*, supra; *In re Melvin*, supra.
[57] *In re Figliola*, 652 A.2d 1071, 1076 (Del. 1995).

15

immediate and aggressive rehabilitation efforts were proactive remedial measures that should be expected and encouraged by the Court and by virtue of this decision.

The Board also finds a 21-month suspension to be consistent with, and in proportion to, the length of suspension imposed in *Amalfitano, Steiner, Melvin, Hull,* and *Howard,* after weighing the comparative and distinguishable circumstances and aggravating factors. *In re Amalfitano* is the most recent and, in this Board's opinion, the most analogous Delaware precedent to the facts before this Board. In *Amalfitano,* an 18-month retroactive suspension was imposed. Amalfitano had a repeated history of multiple DUIs and misdemeanor criminal offenses, and a longstanding history of alcohol addiction relapses.[58] Almalfitano admitted to multiple counts of violating DLRPC Rule 8.4(b), including DUI and related misdemeanor offenses after his transfer to inactive disability status. Amalfitano had previously battled alcoholism and suffered relapses after an 8 year period of sobriety; he had a prior disciplinary record (in 1991 and 1997), and a prior pattern of similar alcohol-related illegal misconduct; all of which are facts not present here. Amalfitano's misconduct included multiple DUIs and driving with a revoked license between 2001 and 2003, even after he was transferred to inactive disability status. However, his misconduct did not cause physical injury to another, a significant distinction from the case before this Panel. At his 2007 hearing, Almalfitano demonstrated to the Board that he had been sober since his last violation in 2003; the retroactive sanction meant that Almalfitano was already eligible for reinstatement well prior to the Board's 2007 decision.

---

[58] *In re Amalfitano,* 932 A.2d 1006 (Del. 2007), supra.

16

A three year retroactive suspension was imposed in *In re Steiner*, where the misconduct and aggravating factors were, in this Board's view, more significant than those here. Steiner had pleaded guilty to two counts of second degree vehicular assault while driving under the influence of alcohol, but had also committed four post-suspension and post-conviction probation violations, representing further acts of similar misconduct while already under suspension and criminal sentencing, in violation of an express "zero tolerance" order of the Superior Court.[59] Aggravating factors included multiple similar offenses and a pattern of further misconduct while Steiner was already subject to discipline, justifying an enhanced sanction. Steiner also caused serious physical injury to two victims as a result of his misconduct. Moreover, Steiner failed to demonstrate any sustained period of rehabilitation, the longest being four months before committing an additional probation violation after the disciplinary proceeding hearing. The maximum allowable three year suspension was imposed, based upon the threat that Steiner's alcohol addiction continued to pose to his clients, the public, and the legal system.[60] This Panel finds the repeated and post-suspension misconduct by Steiner as well as the aggravating factors in *Steiner* to be distinguishable from those present in Respondent's case, such that the sanction imposed in *Steiner* would be overly punitive and inconsistent with the mitigating factors and circumstances that exist here.

*In re Melvin* provides some guidance in determining the length of suspension for criminal misconduct, where alcoholism or chemical dependency is not at issue or a

---

[59] *In re Steiner*, 817 A.2d at 797-798.
[60] *Id.* at 799.

17

mitigating factor.[61] Melvin was sanctioned with an 18-month retroactive suspension as a result of two criminal misdemeanors and multiple counts of numerous disciplinary rules violations. Melvin's misconduct did not cause serious injury or harm to another; however, Melvin's misconduct and aggravating factors also included acts of dishonesty and deceit, plus the absence of remorse demonstrated by Melvin's refusal to acknowledge the wrongful nature or seriousness of his conduct[62] - in stark contrast to the circumstances here.

A two year suspension was imposed in *In re Hull*, where Hull had multiple violations of 12 different rules of professional conduct, including falsifying documents and evidence, and a longstanding pattern of misconduct causing harm to multiple clients.[63] *Hull* was decided before the May 2002 amendment to Disciplinary Procedure Rule 8(a)(2) that reduced the authorized suspension period from five years to three years. Hull suffered from a mental illness that contributed to or caused her misconduct; in contrast to the Respondent, Hull had a prior disciplinary history and had no sustained period of treatment or rehabilitation and was deemed to still be a risk to her clients and to the public.[64]

*In re Howard* imposed a three year retroactive suspension where Howard been convicted of two drug related misdemeanors as a result of his relapse of a drug addiction problem.[65] This length of suspension was considered appropriate in proportion to the

[61] *In re Melvin*, 807 A.2d 550 (Del. 2002).
[62] *Id.* at 554-555.
[63] *In re Hull*, 767 A.2d 197 (Del. 2001).
[64] *Id.* at 201-202.
[65] *In re Howard*, 765 A.2d 39 (Del. 2000);

18

maximum allowable suspension of five years under the Delaware discipline rules in effect at the time.[66] Howard's untreated drug addiction had the potential of causing serious harm to his clients, justifying a substantial period of suspension.[67]

A 21-month suspension adequately contemplates the distinguishable adverse factor in Respondent's case from those under which there was an 18-month or less suspension- serious physical injury to another; but also takes into consideration the absence of several and arguably far more serious aggravating factors that were present in those same cases.

## CONCLUSION

The Board's recommended sanction is suspension for 21 months, retroactive to the date of his transfer to inactive disability status on November 12, 2014. At the time of Respondent's eligibility for reinstatement, he will have almost two years of sobriety and sustained rehabilitation. This Panel believes that a suspension beyond 21 months would be overly-punitive and counter-productive to Respondent's successful and sustained rehabilitation efforts, his recovery and his re-entry to legal practice. This sanction serves as appropriate deterrence to Delaware lawyers, but also contemplates the extent to which this Panel believes Respondent poses a risk to the public and to clients, and to the legal profession, as compared to the aforementioned similarly-situated and sanctioned Delaware lawyers and based upon the case-specific evidence presented as to Respondent's individual rehabilitation and recovery status. Respondent's immediate

---

[66] *Id.* at 46.
[67] *Id*, at 45.

19

remedial actions to seek treatment, rehabilitation, counseling, and to utilize all available resources in order to implement the changes necessary for his return to the practice of law, represent conduct above and beyond even the commendable measures for recovery and rehabilitation that existed in *Amalfitano, Howard, Hull,* and *Steiner.*

Respondent shall also pay the costs of the disciplinary proceedings when presented with a statement of costs by the ODC.

20

BOARD ON PROFESSIONAL RESPONSIBILITY

_____
DANIELLE K. YEARICK, ESQUIRE
Panel Chair

_____
ROBERT SAUNDERS, ESQUIRE

_____
DEBORAH L. MILLER, Ph.D.

Dated: ___1/19/16___, 2015

21

## BOARD ON PROFESSIONAL RESPONSIBILITY
## OF THE SUPREME COURT OF THE STATE OF DELAWARE

In the Matter of a Member of )
The Bar of the Supreme Court )
of Delaware: ) **CONFIDENTIAL**
)
TIMOTHY P. CAIRNS, ) **Board Case No. 111858-B**
)
Respondent. )

## CERTIFICATE OF SERVICE

I, Danielle Yearick, hereby certify that a true and correct copy of the Board's Report in the above-captioned matter was served this _19_ th day of January, 2016, via electronic mail, on the following:

*Delaware Supreme Court Administrator*
William Montgomery
William.Montgomery@state.de.us

Charles Slanina, Esquire
cslanina@delawgroup.com
*Attorney for Respondent*

Jennifer-Kate Aaronson, Esquire
Kate.Aaronson@state.de.us
*Attorney for ODC*

*/s/ DANIELLE K. YEARICK (#3668)*